UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------X

LAURENE YU,

                        Plaintiff,            17 Civ. 7327

      -against-                        OPINION

CITY OF NEW YORK, et al.,

                        Defendants.

----------------------------------------X

A P P E A R A N C E S:

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 11/29/18

Pro Se

LAURENE YU
335 East 14th Street, #52
New York, NY 10009

Attorneys for Defendants

Elizabeth Haley Robins
New York City Law Department
100 Church Street
New York, NY 10007

**Sweet, D.J.**

The defendants City of New York ("the City") and Administration for Children Services ("ACS") (collectively, the "Defendants") have moved pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure to dismiss the Complaint of plaintiff *pro se* Laurene Yu ( "Plaintiff" or "Yu") alleging violations of Title VII of the Civil Rights Act of 1964 ("Title VII"), the Age Discrimination Act of 1967 (the "ADEA"), the Equal Protection Clause, the Due Process Clause, 42 U.S.C. §§ 1983, 42 U.S.C. § 1981, New York State Human Rights Law ("NYSHRL"), and New York City Human Rights Law ("NYCHRL").

Based upon the conclusions set forth below, the motion of the Defendants is granted.

## I. Prior Proceedings

Plaintiff was employed by ACS from April 28, 2008 until on or around September 15, 2016, when she was terminated. *See* Compl. ¶¶ 1, 15.

1

In July 2017, Plaintiff filed a complaint against

the City and ACS with the Equal Employment Opportunity

Commission (the "EEOC") alleging discrimination and

retaliation. *Id.* ¶ 35; Robins Decl. Ex. A. Specifically,

Plaintiff brought complaints under Title VII, the Fourteenth

Amendment, § 1981, and § 1983 that she was discriminated

against on the basis of race ("Asian"), color ("yellow"),

religion (unidentified in the Complaint), sex (female),[1] and

national origin ("Chinese"); under NYSHRL that she was

discriminated against on the basis of these characteristics

and disability (unidentified), predisposing genetic

characteristics (unidentified), and marital status

(unidentified); and under NYCHRL that, in addition to these

characteristics, she was discriminated against on the basis

of partnership status (unidentified), sexual orientation

(unidentified), alienage (unidentified), and citizenship

status (unidentified). *Id.* Plaintiff further alleged that she

was retaliated against, subjected to a hostile work

environment, and defamed. *See* Compl.at 1-2.

On August 10, 2017, the EEOC informed Plaintiff

that it was unable to conclude that there had been any

---

[1]     While Plaintiff does not explicitly identify her sex in the
Complaint, Plaintiff describes being referred to as the "Asian girl,"
Compl. ¶ 2, and it is therefore presumed that Plaintiff is female.

2

violation of the statutes and was therefore closing its file on Plaintiff's charges against ACS. *See* Compl. at 9. Plaintiff was also informed that she had 90 days to file a lawsuit under federal law based on these charges or her right to sue would be lost. *Id.*

Plaintiff filed her Complaint in this action on September 25, 2017, alleging violations of federal, state, and city laws, and containing the allegations described below.

The instant motion was marked fully submitted on June 21, 2018.

## II. The Facts

The following facts are derived from the allegations in and the attachments to the Complaint, as well as the exhibits annexed to the Declaration of Assistant Corporation Counsel Elizabeth H. Robins. These documents are considered as documents referenced in the Complaint, documents on which Plaintiff relied in bringing the suit, and matters to which judicial notice may be taken. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002).

3

On April 28, 2008, Plaintiff was hired by ACS to work as a graphic artist. Compl. ¶ 1. Plaintiff maintained her employment at ACS until September 2016. *Id.* ¶ 26.

Between 2008 and 2011, Yu was disciplined on three separate occasions for insubordination, and using profane, rude, and disrespectful language towards her supervisors, among other things. *See* Robins Decl. Ex. H at 1.

On April 12, 2012, Yu filed a complaint with the New York State Division of Human Rights (the "NYSDHR") against the City and ACS alleging that her supervisors, including Laura Postiglione, discriminated against Yu because of her national origin and race/color, and retaliated against her.[2] *See* Robins Decl. Ex. B at 1-10. On January 28, 2013, the NYSDHR concluded that there was no probable cause to believe that ACS or the City had subjected Yu to retaliation or discrimination. *Id.* Among other things, the NYSDHR found that although there was evidence that Yu's supervisor asked why ACS did not give her position to "the Asian girl" upon

---

[2]     Plaintiff alleges in her Complaint that, sometime "in 2013," she filed a complaint with the NYSDHR claiming that her former director, Postiglione, told a co-worker that "they should go after the Asian girl." Compl. ¶ 2. It seems that Plaintiff is referring to the NYSDHR complaint that she actually filed on April 12, 2012, which was decided on January 28, 2013 and is described in this Opinion. *See* Robins Decl. Ex. B.

learning that she had been demoted, this comment did not indicate discriminatory animus. *Id.* at 12. According to the Complaint, within two weeks of filing this NYSDHR claim in April 2012, Plaintiff was disciplined with "30 days without pay due to inflamed charges." *Id.* ¶ 3. The Complaint does not allege what these "charges" were, or why they were "inflamed."

After an altercation with her supervisor on May 31, 2012, Yu was served with charges for attempting to intimidate her supervisor by throwing a flash drive at her; using disrespectful language; failing to exercise appropriate care of agency equipment; failing to be courteous and considerate; and engaging in conduct detrimental to the Agency. *See* Robins Decl. Ex. C. On April 4, 2013, New York City Administrative Law Judge Kara J. Miller ("ALJ Miller") affirmed these charges and recommended that Yu be suspended for 30 days without pay as a result. *See id.* In reaching her decision, ALJ Miller stated that Plaintiff's testimony was "self-serving and contrived," and that "[a]t times it appeared as though [Plaintiff] was fabricating the testimony as she was testifying." *Id.* at 3. ALJ Miller also found incredible the testimony of Ronald Lehman ("Lehman"), who stated that Postiglione told him, after being demoted, that "they should

5

have gotten the Asian girl." *See id.* at 5-6. Instead, ALJ Miller credited the testimony of Postiglione, who denied making racially disparaging comments about Yu and who testified that she was not even demoted, but merely changed titles. *Id.* at 6. ALJ Miller further pointed out that Plaintiff had filed numerous unsubstantiated discrimination complaints against Postiglione, including the NYSDHR complaint described above. *Id.* at 5.

ALJ Miller's recommendation was affirmed by ACS on April 29, 2013. *See* Robins Decl. Ex. D. Plaintiff appealed that decision to the New York City Civil Service Commission (the "CSC"), which affirmed ACS's decision on December 9, 2013. *See* Robins Decl. Ex. E. Plaintiff thereafter commenced an Article 78 proceeding appealing the CSC decision, which was dismissed because the CSC determination was unreviewable in light of Yu's failure to show that the CSC acted illegally, unconstitutionally, or in excess of its jurisdiction in making its determination. *See* Compl. ¶ 6; Robins Decl. Ex. F. Plaintiff alleges that after filing this Article 78 proceeding, the City "post[ed] inflammatory charges and comments on the Internet." Compl. ¶ 6. The Complaint has no allegations as to the content of the

comments or the specific date of the comments, other than the year.

Plaintiff alleges that in January 2015 she was denied an application for a "Mayors scholarship," and that Personnel Director Faustina Haynes ("Haynes") "retaliated" by stating that the "agency is not able to support [Yu]." Compl. ¶ 7.

In 2015, Plaintiff allegedly: (1) "filed a complaint to Gladys Carrion, Commissioner, that Discipline Lawyer, Susan Hochberg, Esq." was "proffering a witch hunt on [Yu]" and "violating Hatch Act because she was campaigning to be Judge on working hours"; and (2) "complained to Personnel and agency EEO that . . . Kaytlin Simmons . . . was continuing their hostile treatment towards [Yu]; sabotaging [her] computer, keeping [her] out of meetings and failing to provide [her] with salary parity and the computer resources [she] needed." *Id.* ¶ 11-12.

In January 2016, Plaintiff was allegedly written up, "with urgency from [Simmons]," by her supervisor Dan Sedlis one week before his retirement. *Id.* ¶ 13.

On March 10, 2016, Plaintiff allegedly submitted a "Workplace Violence Report," which was dismissed. *Id.* ¶ 16. On March 13, 2016, Plaintiff alleges that she was accused of threatening Simmons and was threatened by ACS attorneys Starker and Hochberg, who, along with Simmons and Assistant Commissioner Andre Brown, "abused their powers to have [Yu] escorted off the property, embarrassed [her], and suspended [her] for 30 days without pay." *Id.* ¶¶ 14, 16-17. Plaintiff also alleges that, on this same day, her "complaints were dismissed" by ACS, which "failed to investigate [Plaintiff's] counterclaims of harassment and disorderly conduct by [Simmons] and her alliances." *Id.* ¶ 15.

Plaintiff claims that on March 16, 2016 she emailed ACS and asked Starker "what Management wanted from [Yu] so [she] could readily improve," but was "railroaded" when Starker "refused to answer [Yu]" and stated "the Union would assist." *Id.* ¶ 18.

Plaintiff contends that she was "involuntarily relocated" to a warehouse in Brooklyn on April 13, 2016, which "forced" her to "pack [her] 8 years of work in two hours, hurting [her] back from their aggressive bullying."

*Id.* ¶ 20. The Complaint provides no specific facts regarding what this "bullying" entailed or who was responsible for it.

Plaintiff alleges that she was "deprived, denied, and pulled out of a city training, in a classroom full of people" on April 14, 2016. *Id.* ¶ 21. The Complaint provides no further details regarding her removal from the training or who was responsible for it.

In July 2016, Plaintiff filed "an internal agency EEO complaint of retaliation, due to [her] involuntary relocation," which was dismissed. *Id.* ¶ 22.

In August 2016, warehouse supervisor Kenny Charles, Brown, and Starker allegedly changed Plaintiff's time sheet without her consent to withhold two days of pay "when [she] had no access to a working computer at the warehouse location." *Id.* ¶ 23.

In August 2016, a proceeding was held before New York City Administrative Law Judge Alessandra F. Zorgniotti ("ALG Zorgniotti") after Plaintiff was charged with using disrespectful language towards her supervisors; failing to be courteous and considerate of fellow employees; sending

discourteous e-mails; failing to obey orders; engaging in threatening behavior; and conducting herself in a manner prejudicial to good order and discipline of the agency. *See* Robins Decl. Ex. G at 2. This proceeding arose out of an incident between Yu and her then-supervisor, Simmons, on March 10 and 11, 2016. *Id.* at 3. Specifically, when Yu sought Simmons's approval of her timesheet and an overtime request, Simmons explained that ACS policy prevented her from approving them without further action by Yu and others. *Id.* at 3-4. In response, Yu allegedly became "extremely irate" and began yelling at Simmons. *Id.* at 4-5. At one point, Yu "point[ed] at [Simmons] in an aggressive manner while yelling something to the effect that, 'I'm going to take you down. I am going to take everyone here down.'" *Id.* at 6. Other employees felt threatened by Yu's behavior, and Yu was ultimately escorted out of the building. *Id.* ALJ Zorgniotti found that Plaintiff sent aggressive text messages and e-mails to ACS employees following her suspension, in which Yu called the employees "disgusting" and told them to "grow up," among other things. *Id.* at 7. ALJ Zorgniotti also noted that Plaintiff had a "demonstrated pattern of disrespectful and threatening behavior," and that she had been "formally disciplined on five prior occasions." *Id.* at 12. As a result,

on September 1, 2016, ALJ Zorgniotti recommended that Yu be terminated from her employment. Robins Decl. *Id.* at 15.

Plaintiff alleges that on August 28, 2016, Hochberg allegedly told Plaintiff she should resign. *Id.* ¶ 24.

On September 11, 2016, Yu alleges that she reported "abuses" to the Department of Investigation ("DOI"). Compl. ¶ 25. The Complaint alleges no further details about the nature of these "abuses" or who committed them.

On September 15, 2016, Plaintiff was terminated after ACS adopted ALJ Zorgniotti's recommendation. *Id.* ¶ 26. Plaintiff subsequently appealed that decision to the CSC, which affirmed the decision. *See* Compl. ¶ 27; Robins Decl. Ex. J. On February 6, 2017, the CSC denied reconsideration of Yu's prior 30-day suspension and her termination, her request to transfer to another agency, and her request for reinstatement to the agency. Compl. ¶¶ 29-31.

Plaintiff contends that she was "railroaded and dismissed" in March 2017 when she emailed the "NYC City Wide Services Commissioner . . . to review [her] case, in which

11

the Chief of Staff, Quinton Haynes[,] emailed [her] back and said [she] should reach out to ACS." *Id.* ¶ 32.

In July 2017, Plaintiff allegedly submitted an application for an internship with the City, which was denied. *Id.* ¶ 34. The Complaint does not specify the City agency to which she applied or the circumstances of the denial.

Also in July 2017, Plaintiff filed a complaint with the EEOC for discrimination and retaliation. *Id.* ¶ 35. That complaint was dismissed on August 10, 2017. *See id.* at 9.

Plaintiff claims that on September 18, 2017 the city "closed [her] case to appeal [her] unemployment," and that, as of September 22, 2017, she had "exhausted mediation and collective bargaining remedies, through a cycle of management and lawyer abuse." *Id.* ¶¶ 37-38. Plaintiff also contends that justice has been "denied, deprived and delayed." *Id.*

**III. The Applicable Standard**

12

Defendants have moved to dismiss pursuant to Federal Rules
of Civil Procedure 12(b)(1) and 12(b)(6). "A court faced with
a motion to dismiss pursuant to both Rules 12(b)(1) and
12(b)(6) must decide the jurisdictional question first
because a disposition of a Rule 12(b)(6) motion is a decision
on the merits and, therefore, an exercise of jurisdiction."
*Magee v. Nassau County Medical Center*, 27 F.Supp.2d 154, 158
(E.D.N.Y. 1998) (citing *Rhulen Agency, Inc. v. Alabama Ins.
Guar. Ass'n*, 896 F.2d 674, 678 (2d Cir. 1990)).

### a. Motion to Dismiss Under Rule 12(b)(1)

Motions to dismiss for lack of subject matter
jurisdiction are considered under Rule 12(b)(1). "When
considering a motion to dismiss for lack of subject matter
jurisdiction . . . a court must accept as true all material
factual allegations in the complaint." *Shipping Fin. Servs.
Corp. v. Drakos*, 140 F.3d 129, 131 (2d Cir. 1998). Still,
"jurisdiction must be shown affirmatively, and that showing
is not made by drawing from the pleadings inferences
favorable to the party asserting it." *Id.* at 131. As a
result, a court may consider affidavits and other material
beyond the pleadings to resolve jurisdictional questions

13

under Rule 12(b)(1). *Robinson v. Government of Malaysia*, 269
F.3d 133, 140 & n.6 (2d Cir. 2001).

### b. Motion to Dismiss Under Rule 12(b)(6)

To "survive a motion to dismiss, a complaint must
contain sufficient factual matter, accepted as true, to
'state a claim to relief that is plausible on its face.'"
*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell
Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Unless a
plaintiff's well-pleaded allegations have "nudged [her]
claims across the line from conceivable to plausible, [the
plaintiff's] complaint must be dismissed." *Twombly*, 550 U.S.
at 570; *see also Iqbal*, 556 U.S. at 678 ("Where a complaint
pleads facts that are 'merely consistent with' a defendant's
liability, it 'stops short of the line between possibility
and plausibility of 'entitlement to relief,'" and must,
therefore, be dismissed.") (citations omitted).

Moreover, the Court must only accept as true the
allegations that contain factual matter, and need not accept
as true the allegations that merely state legal conclusions.
*See, e.g.*, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009);
*Patane v. Clark*, 508 F.3d 106, 112 (2d Cir. 2007); *Thompson*

14

*v. ABVI Goodwill Servs.*, 531 F. App'x 160, 162 (2d Cir. 2013). Additionally, "Plaintiff's failure to include matters of which as pleaders [she] had notice and which were integral to [her] claim—and that [she] apparently most wanted to avoid—may not serve as a means of forestalling the district court's decision on [a 12(b)(6)] motion." *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991). As such, allegations that are contradicted by documentary evidence are not entitled to a presumption of truth. *See L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011).

**IV.  The Applicable Statute of Limitations Bars in Part Plaintiff's Claims Under Section 1981, Section 1983, Title VII, ADEA, NYSHRL, and NYCHRL**

"Title VII [and] the ADEA . . . require a plaintiff to file a notice with the EEOC within 300 days of an alleged adverse action." *Wade v. N.Y.C. Dep't of Ed.*, 667 F. App'x 311, 312 (2d Cir. 2016) (summary order). Plaintiff's claims under § 1983, NYSHRL, and the NYCHRL are subject to a three-year statute of limitations. *See Owens v. Okure*, 488 U.S. 235 (1989) (applying three-year statute of limitations to § 1983 claims); *Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 238 (2d Cir. 2007) (applying three-year statute of

15

limitations to claims under NYSHRL and NYCHRL); N.Y.C.P.L.R. § 214(2) (NYSHRL claims); N.Y.C. Admin. Code § 8-502(d) (NYCHRL). Section 1981 claims are subject to a four-year statute of limitations period. *See Jones v. R. R. Donnelley & Sons Co.*, 541 U.S. 369, 383 (2004).

A claim begins to accrue at the time that a plaintiff knew or had reason to know of a discrete act of discrimination. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 109-10 (2002). Discrete discriminatory acts, such as "such as termination, failure to promote, denial of transfer or refusal to hire," are not actionable if time-barred, "even when they are related to acts alleged in timely filed charges." *Id.* at 113-14.

According to the Complaint, Plaintiff filed her Charge of Discrimination with the EEOC in July 2017. Compl. ¶ 35. The Complaint does not specify the exact date, but Exhibit A of the Plaintiff's memorandum in opposition to this motion shows that Plaintiff filed her Intake Questionnaire with the EEOC on July 25, 2017. Pl.'s Opp. Br. Ex. A at 5. Accordingly, to the extent that Plaintiff's Title VII and ADEA claims arise from discriminatory or retaliatory acts

16

accruing before September 28, 2016 (300 days before July 25, 2017), those claims are time-barred.

In addition, Plaintiff commenced the instant action on September 25, 2017. As such, any § 1983, NYSHRL, or NYCHRL claims based on conduct that accrued prior to September 25, 2014, as well as any § 1981 claims that accrued before September 25, 2013, are likewise untimely.

**V. The Election of Remedies Doctrine Bars the NYSHRL and NYCHRL Claims to the Extent They Were Adjudicated Before the NYSDHR**

The "election of remedies" provisions found in NYSHRL and NYCHRL provide that an individual who has filed a complaint with either the NYSDHR or the New York City Commission on Human Rights (the "Commission") thereby waives her right to sue in court.

The NYSHRL provision reads as follows:

Any person claiming to be aggrieved by an unlawful discriminatory practice shall have a cause of action in any court of appropriate jurisdiction . . . unless such person

17

had filed a complaint hereunder or with any local commission

on human rights . . . provided that, where the division has

dismissed such complaint on the grounds of administrative

convenience, on the grounds of untimeliness, or on the

grounds that the election of remedies is annulled, such

person shall maintain all rights to bring suit as if no

complaint had been filed in the division.

N.Y. Exec. Law § 297(9). The NYCHRL provision

similarly states:

Except as otherwise provided by law, any person to

be aggrieved an unlawful discriminatory practice as defined

in chapter one of this title or by an act of discriminatory

harassment or violence as set forth in chapter six of this

title shall have a cause of action in any court of competent

jurisdiction . . . unless such person has filed a complaint

with city commission on human rights or with the state

division of human rights with respect to such alleged

unlawful discriminatory practice or act of discriminatory

harassment or violence.

N.Y.C. Admin. Code § 8-502(a). As such, NYSHRL and

NYCHRL require dismissal of a suit in court if the

18

complainant has lodged a complaint with either the NYSDHR or the Commission, and this bar applies in federal court as well as state court. *See York v. Ass'n of the Bar of the City of N.Y.*, 286 F.3d 122, 127 (2d Cir. 2002); *McGullam v. Cedar Graphics, Inc.*, 609 F.3d 70, 74 n.3 (2d Cir. 2010).

In this case, the election of remedies bar requires dismissal of all of Yu's claims brought under NYSHRL based on national origin, race/color, and retaliation. These claims are barred because Yu's April 2012 NYSDHR complaint explicitly included these claims, and the NYSDHR concluded after an investigation that there was "no probable cause" to believe such prohibited conduct occurred. *See* Robins Decl. Ex. B at 4, 11.

Plaintiff has alleged that she filed a charge with the NYSDHR alleging race discrimination, ostensibly based on the same conduct underlying the claims here. More specifically, in the instant action Plaintiff has alleged that her former director, Postiglione, said to a colleague that "they should go after the Asian girl." Compl. ¶ 2. In the NYSDHR proceeding, support was found for only one remark regarding Yu's ethnicity, namely, that Postiglione was found to have asked, upon learning that she was being demoted, why

19

ACS did not "give it to the Asian girl." Robins Decl. Ex. B at 12. While phrased somewhat differently, the essence of the alleged statement by Postiglione is the same. As stated above, the NYSDHR found that there was no discriminatory animus underlying Postiglione's comment. Robins Decl. Ex. B at 3.

Therefore, allegations that were already argued before the NYSDHR, including the allegation that Postiglione discriminated against Yu by referring to her as the "Asian girl," are dismissed.

**VI. The Complaint Fails to State a Cause of Action Under Federal Law or NYSHRL**

**a. Discrimination Claims**

*1. Title VII and NYSHRL*[3]

Plaintiff brings this lawsuit under Title VII for alleged discrimination on the basis of race ("Asian"), color ("yellow"), religion (unidentified), sex (unidentified but

---

[3]     Title VII and NYSHRL claims are considered under the same framework, and the Court therefore analyzes them together. *See, e.g., McGill v. Univ. of Rochester*, 600 F. App'x 789, 790 (2d Cir. 2015).

assumed female) or national origin ("Chinese"), and under NYSHRL for alleged discrimination on the basis of these same characteristics, as well as creed (unidentified), disability (unidentified), predisposing genetic characteristics (unidentified), and marital status (unidentified).

Under the framework set forth in *McDonnell Douglas v. Green*, 411 U.S. 792 (1973), to make a *prima facie* showing of discrimination under Title VII or NYSHRL, a plaintiff must show that "(1) she is a member of a protected class; (2) she applied and was qualified for a job for which the employer was seeking applicants; (3) she was rejected for the position; and (4) the position remained open and the employer continued to seek applicants having the plaintiff's qualifications." *Aulicino v. N.Y.C. Dep't of Homeless Servs.*, 580 F.3d 73, 80 (2d Cir. 2009). "[W]hile a discrimination complaint need not allege facts establishing each element of a *prima facie* case of discrimination to survive a motion to dismiss, it must at a minimum assert nonconclusory factual matter sufficient to nudge its claims across the line from conceivable to plausible" in order to proceed. *EEOC v. Port Auth. of N.Y. & N.J.*, 768 F.3d 247, 254 (2d Cir. 2013). Put differently, "absent direct evidence of discrimination, what must be plausibly supported by facts alleged in the complaint

is that the plaintiff is a member of a protected class, was qualified, suffered an adverse employment action, and has at least minimal support for the proposition that the employer was motivated by discriminatory intent." *Littlejohn v. City of N.Y.*, 795 F.3d 297, 312 (2d Cir. 2015).

Although the Complaint provides a list titled "Adverse Employment Action," it offers no facts to indicate that these are anything but conclusory allegations. Moreover, even if Plaintiff did adequately allege an adverse employment action, her claim fails because the facts do not provide even minimal support for the proposition that the employer was motivated by discriminatory intent.

Plaintiff states that she has worked at ACS since 2008 and was terminated in 2016, yet the only allegation remotely connected to a protected characteristic in her entire Complaint is the claim that her former director allegedly stated in 2013 that "they should go after the Asian girl." *See* Compl. ¶ 2.

*2. ADEA*

A plaintiff alleging discrimination under the ADEA must allege that (1) she was within the protected age group; (2) she was qualified for the position she held; (3) she suffered an adverse employment action; and (4) the adverse employment action occurred under circumstances giving rise to an inference of discrimination. *See Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 107 (2d Cir. 2010). Moreover, the plaintiff must allege that "age was the 'but-for' cause of the employer's adverse action." *Gross v. FBL Fin. Servs. Inc.*, 557 U.S. 167, 177 (2009).

Here, the Complaint fails to allege Plaintiff's age or facts to give rise to any inference of discrimination. As such, Plaintiff's ADEA claims are also dismissed.

**b. Retaliation Claims**

To establish a *prima facie* case of retaliation under Title VII, the ADEA, and NYSHRL, an employee must show (1) participation in a protected activity known to the defendant(s); (2) an employment action disadvantaging the plaintiff; and (3) a causal connection between the protected

23

activity and the adverse employment action. *Sotomayor v. City of N.Y.*, 862 F.Supp.2d 226, 261 (E.D.N.Y. 2012) (citation omitted).

An adverse employment action is any action that "could well dissuade a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006). For an adverse retaliatory action to be causally connected to a complaint, plaintiff "must plausibly allege that the retaliation was a 'but-for' cause of the employer's adverse action" or "that the adverse action would not have occurred in the absence of the retaliatory motive." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 90 (2d Cir. 2015) (citation omitted). The causal connection required for proof of a retaliation claim can be established "indirectly by timing: protected activity followed closely in time by an adverse employment action." *Id.* However, "district courts in [this] Circuit have held that a passage of more than two months between the protected activity and the adverse employment action does not allow for an inference of causation." *Preuss v. Kolmar Labs, Inc.*, 970 F.Supp.2d 171, 198 (S.D.N.Y. 2013). Moreover, even where temporal proximity exists, "[w]here timing is the only basis for a claim of retaliation, and gradual adverse job actions

24

began well before the plaintiff had ever engaged in any protected activity, an inference of retaliation does not arise." *Slattery v. Swiss Reinsurance Am. Corp.*, 248 F.3d 87, 95 (2d Cir. 2001).

According to Plaintiff, Defendants retaliated against her after she protested discrimination, filed grievances for unemployment, and reported misconduct. Compl. at 2. Construing the Complaint liberally in favor of the Plaintiff, it alleges the following incidents of retaliation after September 25, 2014:[4]

First, Plaintiff alleges that in January 2015 she applied for and was denied application for "Mayors scholarship, where Personnel Director Faustina Haynes[] retaliated and stated 'the agency is not able to support [Yu].'" Compl. ¶ 7. Even assuming that these allegations meet the pleading standard for retaliatory "adverse employment action," Plaintiff fails to plead facts plausibly supporting an inference that these actions were taken *because* she complained of or otherwise opposed discrimination. Indeed, the Complaint has no allegations that Plaintiff complained of

---

[4]     Title VII and ADEA claims accruing before September 28, 2016 and NYSHRL claims accruing before September 25, 2014 are time-barred, as discussed in Part IV, *supra*.

or otherwise opposed discrimination between her filing the
Article 78 proceeding in 2013 and her denied application for
"Mayors scholarship" in January 2015.

Second, Plaintiff alleges that her supervisor,
Sedlis, "wrote [her] up" in January 2016 "with urgency from
Kaytlin Simmons." Compl. ¶ 13. However, the Complaint does
not provide facts as to how this action affected Plaintiff's
employment, if at all.

Third, Plaintiff makes several allegations of
retaliation occurring March 13-16 2016. Compl. ¶¶ 14-18. To
the extent that Plaintiff alleges that she engaged in
protected activity by filing Union grievances based on
alleged underpayment and working above title, filing a
complaint to the ACS Commissioner that ACS attorney Hochberg
was violating the Hatch Act, or submitting a Workplace
Violence Report, Compl. ¶¶ 9, 11, 16, 25, there are no facts
in the Complaint supporting the proposition that ACS's
subsequent actions were taken in order to protest or oppose
statutorily prohibited discrimination. On the contrary,
evidence suggests that these actions, including Yu's 30-day
suspension, were taken as a result of the incident between Yu
and Simmons relating to Yu's timesheet and overtime approval.

26

*See* Robins Decl. Ex. G. ALJ Zorgniotti later found that Yu's behavior during that incident warranted disciplinary action. *See id.* Nothing in the Complaint undermines ALJ Zorgniotti's findings or remotely suggests that these actions were taken in retaliation for Yu's reports of misconduct, the last of which had been made at least three months prior. *See id.*

Fourth, Plaintiff alleges that she was relocated to a warehouse in "deep Brooklyn" on April 13, 2016, where she was "forced to pack [her] 8 years of work in two hours, hurting [her] back from their aggressive bullying." *Id.* ¶ 20. Assuming that Plaintiff is suggesting that this action was adverse and taken in retaliation for the complaints she made against her colleagues in March 2016, the facts as alleged do not support such a causal connection. By April 2016, Plaintiff had been subjected to no less than five disciplinary actions for her misconduct since she began working at ACS in 2008. *See* Robins Decl. Ex. G at 12-13. Accordingly, the timing of the action cannot be sufficient to establish a causal connection between it and Yu's previous complaints. The same is true with respect to the agency's denial of Yu's internal retaliation complaint in July 2016. Compl. ¶ 22.

Fifth, Plaintiff alleges that she was terminated and escorted out of the building on September 15, 2016 as a result of her reporting "abuses" to the DOI on September 11, 2016. Compl. ¶¶ 25-26. But those actions were taken pursuant to the recommendation of ALJ Zorgniotti, who found that termination was warranted "[i]n consideration of [Yu's] proven misconduct, her prior disciplinary record, as well as the absence of any compelling mitigation evidence." *See* Robins Decl. Ex. G at 15. Moreover, Plaintiff admits that the hearing that resulted in her termination was held *before* she reported any abuses to DOI, Compl. ¶ 24, meaning the disciplinary recommendation resulting from that hearing cannot be considered retaliatory. *See Pinero v. Long Island State Veterans Home*, 375 F. Supp. 3d 162, 168 (E.D.N.Y. 2005) ("There can be no inference of retaliatory animus where the adverse employment action occurred prior to the protected activity.").

Sixth, Plaintiff alleges that on January 30, 2017, the CSC affirmed ALJ Zorgniotti's recommendation and on February 6, 2017, the CSC denied her requests for a reconsideration of her 30-day suspension and subsequent termination, a transfer to another City agency, and her reinstatement to ACS. Compl. ¶¶ 27, 29-31. As with the

allegations above, Plaintiff provides no facts to suggest that these actions were taken because of her various reports or complaints; by contrast, Yu's disciplinary history and pattern of misconduct, as summarized by ALJ Miller and ALJ Zorgniotti, suggests that the CSC had a legitimate basis for affirming ALJ Zorgniotti's decision and denying Yu's subsequent requests.

Finally, Plaintiff alleges that she applied for an internship through the City and was denied in July 2017. However, July 2017 was roughly 11 months after she had last made any complaints or reports about ACS employees. Moreover, Plaintiff provides no facts regarding what the position entailed or which City agency it involved. As such, the mere fact that she was denied an internship with the City in July 2017 cannot support a claim for retaliation.

## c. Section 1981 and Section 1983 Claims

A municipality may not be held liable in an action under §§ 1981 or 1983 for allegedly unconstitutional actions by its employees below the policymaking level solely on the basis of *respondeat superior*. *Monell v. Department of Social Servs.*, 436 U.S. 658, 691 (1978). Instead, a plaintiff is

required to show that "the challenged acts were performed pursuant to a municipal policy or custom." *See Littlejohn*, 795 F.3d at 314 (citing *Patterson v. Cty. of Oneida*, 375 F.3d 206, 226 (2d Cir. 2004); *Monell*, 436 U.S. at 692-94). A plaintiff "need not identify an express rule or regulation," but instead may establish liability by demonstrating that "a discriminatory practice of municipal officials was so persistent or widespread as to constitute a custom or usage with the force of law, or that a discriminatory practice of subordinate employees was so manifest as to imply the constructive acquiescence of senior policy-making officials." *Id.* A municipal policy "may be inferred from the informal acts or omissions of supervisory municipal officials," *Turpin v. Mailet,* 619 F.2d 196, 200 (2d Cir.), *cert. denied,* 449 U.S. 1016, 101 S.Ct. 577, 66 L.Ed.2d 475 (1980), and "municipal inaction such as the persistent failure to discipline subordinates who violate [persons'] civil rights could give rise to an inference of an unlawful municipal policy of ratification of unconstitutional conduct," *Batista v. Rodriguez,* 702 F.2d 393, 397 (2d Cir. 1983).

A complaint that fails to allege that a municipal policy or custom caused the deprivation of a constitutional right is facially deficient and warrants dismissal. *Ezagui v.*

30

*City of N.Y.*, 726 F.Supp.2d 275, 284-85 (S.D.N.Y. 2010).

Thus, here, even if Plaintiff had adequately alleged a

constitutional violation, her §§ 1981 and 1983 claims fail

because she has not alleged that a municipal policy or custom

caused that violation.

### d. **Hostile Work Environment Claims**

To bring a hostile work environment claim under

federal or state law, a plaintiff must allege facts from

which a court can infer that "the workplace is permeated with

discriminatory intimidation, ridicule, and insult that is

sufficiently pervasive to alter the conditions of the

victim's employment." *Kassner*, 496 F.3d at 240. Plaintiff

must also show that she was "subjected to hostility because

of [her] membership in a protected class." *Id.* at 241. The

incidents giving rise to a hostile work environment claim

must be "continuous and concerted to be considered

pervasive," and "minor incidents do not merit relief." *Id.* at

240-41.

The factual allegations in the Complaint are

insufficient to state a claim for hostile work environment.

The only discriminatory comment alleged in the Complaint is

Postiglione's reference to Yu as the "Asian girl" in 2013.
Compl. ¶ 2. To the extent Plaintiff claims a hostile work
environment based on this alleged statement, "isolated, minor
acts or occasional episodes" of discrimination do not warrant
relief. *Brennan v. Metr. Opera Ass'n*, 192 F.3d 310, 318 (2d
Cir. 1999). Plaintiff's hostile work environment claims are
therefore dismissed.

### e. Fourteenth Amendment Claims

To the extent the Complaint can be read to allege
standalone equal protection and due process violations, those
claims also fail.

The Equal Protection Clause of the Fourteenth
Amendment is "essentially a direction that all persons
similarly situated should be treated alike." *Brown v. City of
Syracuse*, 673 F.3d 141, 151 (2d Cir. 2012). The Second
Circuit has recognized equal protection claims under two
frameworks. The first type of claim, a "class of one" claim,
is unavailable to Plaintiff, a public employee. *See Engquist
v. Or. Dep't of Agric.*, 553 U.S. 791 (2008). Courts in the
Second Circuit have also recognized equal protection claims
based on a second theory, the "selective enforcement theory,"

32

where a plaintiff has proven that (1) she, compared with others similarly situated, was selectively treated; and (2) that such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person. *See Brown*, 673 F.3d at 151-52.

The Complaint fails to allege that Plaintiff was treated differently than others similarly situated, or that the selective treatment was based on any of the impermissible characteristics described above. Instead, the Complaint merely states conclusory allegations that Defendants violated Plaintiff's equal protection rights. As such, Plaintiff's equal protection claims are dismissed.

Additionally, Plaintiff's due process claim fails because Plaintiff received all of the process that she was due. In this Circuit, an employee "who has a property interest in his employment . . . is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story before he is subjected to the loss of employment." *Lefebvre v. Morgan*, 234 F.Supp.3d 445, 457

33

(S.D.N.Y. 2017). With respect to Plaintiff's 30-day suspension in 2013, she received notice of the charges and a hearing at which evidence was presented and at which she was represented by counsel. *See* Robins Decl. Ex. E. Plaintiff also appealed that decision to the CSC, and had the assistance of counsel in doing so. *Id.* The same is true with respect to Plaintiff's 2016 disciplinary proceedings, which resulted in her termination. *See* Robins Decl. Exs. G, J. Accordingly, Plaintiff was provided a full and fair opportunity to be heard on the charges that led to her suspension and termination, and any due process claims are dismissed.

## f. Dismissal with Prejudice as to the Federal and NYSHRL Claims

While a district court has no obligation to grant leave to amend where such leave has not been requested, *see Gallop v. Cheney*, 642 F.3d 364, 369 (2d Cir. 2011), a *pro se* complaint generally should not be dismissed "without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *See Branum v. Clark*, 927 F.2d 698, 705 (2d Cir. 1991). Still, dismissal with prejudice is permissible where a

34

complaint's substantive allegations are insufficient and repleading would be futile. *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).

Here, amendment as to the Title VII, ADEA, Section 1981, Section 1983, Fourteenth Amendment, and NYSHRL claims would be futile because the defects related to those claims are not a result of "inadequate[] or inartful[]" pleading. *Id.* at 112.

Plaintiff has repeatedly filed claims with various agencies that are virtually identical to the ones raised in this case, and they have consistently been deemed meritless. ALJ Miller, in recommending Yu's 30-day suspension, noted that Yu ignored the seriousness in which ACS viewed her misconduct, continually demonstrated a "profound disdain for her supervisor," and seemed to "feel[] entitled." Robins Decl. Ex. C at 10. Similarly, in recommending termination of Plaintiff's employment, ALJ Zorgniotti noted her "poor attitude, her lack of remorse, and her adamant, mistaken belief that the problems lie with her supervisors and that they are there to serve her only." Robins Decl. Ex. G at 14. In short, it is apparent that the substance of Plaintiff's

federal and NYSHRL allegations is mere disagreement with
Defendants' actions taken in response to her misconduct.

Accordingly, even read liberally, Plaintiff's
Complaint does not support a valid claim under federal law or
NYSHRL, and those claims are dismissed with prejudice.

**VII. The Remaining Claims Are Also Dismissed**

Plaintiff also brings discrimination claims under
NYCHRL.[5] Having dismissed all of Plaintiff's federal claims,
as well as the NYSHRL claims considered under the same
standards as their federal counterparts, the Court declines
to exercise supplemental jurisdiction over Plaintiff's NYCHRL
claims. *See* 28 U.S.C. § 1367 (permitting a district court to
"decline to exercise supplemental jurisdiction over a claim"
once it "has dismissed all claims over which it has original
jurisdiction"); *Morse v. Univ. of Vt.*, 973 F.2d 122, 127 (2d
Cir. 1992) ("[when] all federal-law claims are eliminated
before trial, the balance of factors . . . point toward
declining to exercise jurisdiction over the remaining state-
law claims"); *Espinoza v. N.Y.C. Dep't of Transp.*, 304
F.Supp.3d 374, 391 (S.D.N.Y. 2018) (noting that "[c]ourts in

---
5

this District routinely decline to exercise supplemental jurisdiction over a plaintiff's NYCHRL claims after dismissing all federal claims").

The Complaint could also be read as raising a state law defamation claim. *See* Compl. ¶ 6 (alleging that Defendants "post[ed] inflammatory charges and comments on the internet"). To the extent that is the case, the Court also similarly declines to exercise jurisdiction over the defamation claim.

Plaintiff's NYCHRL and defamation claims are therefore dismissed without prejudice to re-file in state court.

**VIII. Conclusion**

Under the authorities and conclusions set forth above, the Defendants' motion to dismiss the Complaint is granted in its entirety. Plaintiff's claims under federal law and NYSHRL are dismissed with prejudice, while Plaintiff's NYCHRL and defamation claims are dismissed without prejudice to re-file in state court.

It is so ordered.

**New York, NY**
**November 29 2018**

**RÓBERT W. SWEET**
**U.S.D.J.**