```
                   UNITED STATES DISTRICT COURT
                   SOUTHERN DISTRICT OF NEW YORK

In re:                                  :
                                           Docket #17cv7327
 YU,                                    : 1:17-cv-07327-AJN-BCM

                       Plaintiff,       :

  - against -                           :

 CITY OF NEW YORK, et al.,              :
                                           New York, New York
                       Defendants.      : April 1, 2020

-----------------------------------:  TELEPHONE CONFERENCE


                      PROCEEDINGS BEFORE
                 THE HONORABLE BARBARA C. MOSES,
            UNITED STATES DISTRICT COURT MAGISTRATE JUDGE


APPEARANCES:

For Plaintiff:          LAURENE YU, PRO SE
                        335 East 14th Street, #52
                        New York, New York  10009


For Defendants:         NEW YORK CITY LAW DEPARTMENT
                        BY:  KIMBERLY WILKENS, ESQ.
                             DONALD SULLIVAN, ESQ.
                        100 Church Street
                        New York, New York  10007




Transcription Service: Carole Ludwig, Transcription Services
                        155 East Fourth Street, #3C
                        New York, New York 10009
                        Phone:  (212) 420-0771
                        Email:  Transcription420@aol.com


Proceedings recorded by electronic sound recording;
Transcript produced by transcription service.
```

## INDEX

### E X A M I N A T I O N S

| Witness | Direct | Cross | Re-Direct | Re-Cross | Court |
|---------|--------|-------|-----------|----------|-------|
| None | | | | | |

### E X H I B I T S

| Exhibit Number | Description | ID | In | Voir Dire |
|----------------|-------------|-----|-----|-----------|
| None | | | | |

1

1                                                                3

2              THE COURT:  Good morning again, ladies and

3    gentlemen, this is Judge Barbara Moses presiding. This is

4    Yu, Y-U, against the City of New York, et al., civil case

5    number 17cv7327.  In a moment, I am going to ask the pro se

6    plaintiff and the counsel for the defendants to introduce

7    themselves on the record. Before I do that, let me just

8    spend a moment making sure that we get as clear a record as

9    possible. As you know, due to the COVID-19 pandemic, we are

10   unable to hold routine court conferences in person in the

11   courthouse as we ordinarily would do.  Consequently, we are

12   holding this conference on a telephone line, AT&T

13   teleconference line.

14              We are making an audio recording. The audio

15   recording may be turned into a written transcript by the

16   parties if they so desire. The Court will make the audio

17   recording available for that purpose.  The audio recording,

18   itself, cannot be an official court record, but it can be

19   turned into a written transcript by a certified court

20   reporter that could then be placed on the court's docket and

21   become and official court record. In order to make sure that

22   the audio record is as clear as possible, which in turn will

23   insure that any later typed transcript is as clear as

24   possible, we all have to comply with some fairly basic

25   ground rules, the most important of which is we can only

```
 1                                                         4
 2  speak one at a time.  The second of which is please
 3  reintroduce yourself briefly each time you speak,
 4  particularly if there are individuals on the call whose
 5  voices sound similar, the court reporter may be unable to
 6  distinguish who is talking unless you briefly reintroduce
 7  yourself at the beginning. If you are tempted to interrupt
 8  another speaker, if you feel they are saying something wrong
 9  or that you need to respond, I will call on you, I will give
10  you an opportunity to respond, please wait until I did that.
11          Finally, I hope that we are all on either headsets
12  or handsets, nobody should have their phone on speakerphone,
13  because when you hold a telephone conference on
14  speakerphone, unfortunately all kinds of background noises
15  get picked up and we can unfortunately hear your dog barking
16  or your dishwasher running, or whatever it may be that's
17  going on at the location where you are at. So if you are on
18  speaker, I would ask that you take your phone off speaker
19  and I will try to remind you if we run into trouble on the
20  audio front as the call progresses. So let me now begin by
21  asking the pro se plaintiff to formally introduce herself on
22  the record, Ms. Yu.
23          MS. LAURENE YU:  Good morning, Ms. Laurene Yu
24  present.
25          THE COURT:  Good morning, Ms. Yu, is there anyone
```

```
1                                                        5
2   else with you at your end of the line?
3              MS. YU:  No, there isn't.
4              THE COURT:  Very well, and who is on the line for
5   the defendants?
6              MS. KIMBERLY WILKENS:  Good morning, Your Honor,
7   assisting Corporation Counsel, Kimberly Wilkens.
8              THE COURT:  Ms. Wilkens, good morning, is
9   anyone on the line with you?
10             MS. WILKENS:  Yes, Your Honor.
11             MR. DONALD SULLIVAN:  Good morning, Your
12  Honor, this is Don Sullivan from the City Law
13  Department, I'm not with Ms. Wilkens, but I'm also
14  present for the call.
15             THE COURT:  All right, so we have Ms. Wilkens
16  and Mr. Sullivan, is it?
17             MR. SULLIVAN:  Yes, Your Honor, thank you.
18             THE COURT:  Okay, for the record, I will now
19  spell everyone's name, Ms. Yu is, her last name is Y-
20  U, Ms. Wilkens is W-I-L-K-I-N-S, and Mr. Sullivan is
21  S-U-L-L-I-V-A-N, which reminds me of one other
22  important instruction which his when you are speaking,
23  if you use a proper name, the name of a supervisor, or
24  a coworker, or whoever it may be, please spell that
25  person's last name because a court reporter later
```

```
 1                                                     6
 2   trying to make a transcript from our recording
 3   otherwise could easily guess wrong. So let me set the
 4   stage --
 5            MS. WILKENS:  Your Honor?
 6            THE COURT:  Ms. Yu?
 7            MS. WILKENS:  This is Ms. Wilkens, I just
 8   wanted to correct you, the spelling of my last name is
 9   W-I-L-K-E-N-S, sorry about that.
10            THE COURT:  Thank you very much, that's why we
11   do this, W-I-L-K-E-N-S, all right, and you see, I
12   already heard your voice and thought you were Ms. Yu
13   but you were not, you were Ms. Wilkens, which is why
14   it's important to reintroduce yourself each time you
15   start to speak. Let me just set the stage for a
16   moment. I see from the docket sheet, this is my first
17   conference with the parties, I was designated as the
18   presiding Magistrate Judge for general pretrial just
19   recently by the District Judge, Judge Nathan.  Judge
20   Nathan was not the original District Judge assigned to
21   this case, the original District Judge was the late
22   Judge Sweet.  The case was filed, I see, in 2017, the
23   defendants made a motion to dismiss, Judge Sweet
24   granted the motion to dismiss, the pro se plaintiff
25   appealed to the Second Circuit Court of Appeals. The
```

```
 1                                                      7
 2   Second Circuit Court of Appeals reversed in part and
 3   remanded.  When the case was returned to the District
 4   Court, Judge Sweet, having passed away, the case was
 5   reassigned to Judge Nathan who, in turn, referred it
 6   to me for general pretrial. So that is where we are,
 7   no discovery, as best I can tell, has ever taken
 8   place, and the mediation, which was scheduled to take
 9   place at one point back when the matter was before
10   Judge Sweet, as best I can tell, that never happened
11   either.  Ms. Wilkens, can you confirm that there has
12   been no mediation?
13              MS. WILKENS:  Yes, there has been no mediation
14   on this case.
15              THE COURT:  All right, so we are effectively
16   almost at the beginning of the case.  Now let me be
17   practical, I am a practical Magistrate Judge and I
18   want to be especially practical given the very
19   difficult circumstances that we are all operating
20   under given the pandemic which is making normal life
21   impossible in many respects. There are two ways I
22   could go with this case at the present time.  I could
23   give the plaintiff leave to amend, as you all know
24   because you have read the Second Circuit's opinion.
25   The Second Circuit agreed with Judge Sweet that the
```

8

1
2  plaintiff has failed adequately to state a number of
3  her claims, even those which are in the applicable
4  statute of limitations; however, because she is pro
5  se, the Second Circuit directed that she be given an
6  opportunity to re-plead, which I am happy to set a
7  schedule down for today. At that point, the defendants
8  would have an opportunity after reviewing the
9  plaintiff's amended pleading to either answer it or
10 make another motion to dismiss if the defendants felt
11 it was defective in some way.  We could then have
12 another round of motion practice which could take many
13 months. If either side was unhappy with the way that
14 motion practice came out there could, in theory, be
15 another appeal to the Second Circuit. It could be, in
16 other words, a long time before we really got to the
17 facts and to the evidence.

18          Now another thing that I could do is I could
19 direct the parties to what I would ordinarily call
20 early mediation, not so early in this case since the
21 case was filed in 2017, but still early in terms of my
22 own tenure over the case. And if I were to direct the
23 parties to early mediation, you would mediate the
24 dispute before a court annexed mediator, that is
25 someone who is not a judge but who has been trained in

1                                                    9

2  mediation and provides that service without charge to

3  the parties.  Of course, you would have to do it

4  either telephonically or by some kind of video

5  conference in light of the current national health

6  emergency.  So those are your two basic options for

7  what you want to spend the next few months doing. Ms.

8  Yu, do you understand the options I have outlined and

9  do you have a preference?

10         MS. YU:  Yes, Your Honor, I actually already

11  had amended my complaint once so I don't believe I

12  will be amending this case again.  I think that it was

13  asked that we mediate but the City dismissed that so

14  that wasn't an option at that time.

15         THE COURT:  When you say that you already

16  amended your complaint once, can you show me where

17  that is on the docket or when it was that you did

18  that?

19         MS. YU:  It was really (indiscernible) when I

20  first filed it, I'm sorry, I don't have that in front

21  of me.

22         THE COURT:  Ms. Wilkens or Mr. Sullivan, is

23  there an amended complaint that I am missing here?

24         MR. SULLIVAN:  Your Honor, this is Mr.

25  Sullivan, I don't believe there is an amended

10

1

2  complaint, I'm trying to call up the Pacer docket

3  sheet to make sure.

4       THE COURT:  I'm looking at the Pacer docket

5  sheet now and I am not seeing an amended complaint.

6       MS. YU:  My original complaint was asked to be

7  amended so it's probably very early on.

8       MS. WILKENS:  Your Honor, this is Kim Wilkens,

9  on docket number 5 there was, I don't know if this is

10  maybe what plaintiff is referring to, an amended

11  application to proceed without prepaying fees or

12  costs, but from my knowledge of the case I don't

13  believe there was an amended complaint filed.

14       THE COURT:  Ms. Yu, do you have a copy of your

15  amended complaint handy, can you tell me the date of

16  it?

17       MS. YU:  I have to go back to the original

18  case so that's -- unfortunately, I just have this

19  current document in front of me.

20       THE COURT:  And what current document do you

21  have in front of you, Ms. Yu?

22       MS. YU:  Your Honor documents --

23       THE COURT:  My documents.

24       MS. YU:  Yes.

25       THE COURT:  Oh, you mean my order scheduling

1

2  this proceeding?

3          MS. YU:  Yes, I didn't know to go back to the

4  original files which is a different case, but I

5  believe, I know it's early on and I did file.

6          THE COURT:  Well I'm not sure you did. I'm not

7  trying to be difficult here, but I have the Court's

8  electronic docket up on my computer screen and unless

9  it's hidden somewhere as an attachment to something

10  else, which occasionally happens given the way our

11  electronic docket sheet is created, but unless it's

12  attached to something else, I am not seeing it.  and

13  your original complaint, the complaint that you filed

14  on September 25, 2017, which is docket number 2,

15  docket entry number 2 on our electronic docket sheet,

16  is the complaint that, as best I understand it, the

17  District Judge found to be insufficient on its face.

18          So the problem is if you stick with that one,

19  it's not going to help you.  You have, by order of the

20  Second Circuit, and opportunity now to restate your

21  claims to beef up your specific factual allegations

22  and to see whether they add up, assuming them to be

23  true, to see whether they add up to a cognizable claim

24  under Title 7, for example, or one of the other laws

25  under which you are suing. But the fact that the

1
2  Second Circuit has remanded to give you leave to amend
3  does not mean that the Second Circuit has found your
4  existing complaint to be adequate, the Second Circuit
5  did not so find.  So I think the ball is in your
6  court, Ms. Yu.
7           MS. YU:  Oh, okay.  May I ask the defendants
8  what they would like to do?
9           THE COURT:  Well let's get the City's view on
10  what would be a good practical way to go forward in
11  this case? Who is speaking for the defendants on this
12  issue?
13           MS. WILKENS:  Kim Wilkens.  Our position is that
14  the plaintiff should amend her complaint.
15           THE COURT:  All right, you're not interested in
16  going to mediation at this time, is that correct?
17           MS. WILKENS:  We're not interested in mediation at
18  this time but we would, if plaintiff was considering
19  settling we would entertain a settlement proposal.
20           THE COURT:  Without giving me any figures, because
21  this is not a confidential settlement conference, this is a
22  public scheduling conference, Ms. Yu, have you had any
23  settlement negotiations with the defendants --
24           MS. YU:  No.
25           THE COURT:  And, if not, are you interested in

1                                                          13

2   initiating such negotiations?

3          MS. YU:  Well since the City has brought it up, I

4   would be interested in the settlement, of course.

5          THE COURT:  Okay, give me one moment, please. I am

6   just looking at the City's motion to dismiss which was made

7   before Judge Sweet to make sure I understand what pleading

8   it was made against.  It does not refer to any amended

9   complaint.

10         MR. SULLIVAN:  Your Honor, this is Mr.

11  Sullivan, I'm going back over the history of the case

12  in my mind, I think that plaintiff might have also

13  filed an Article 78 proceeding and that may be where

14  she's thinking there might have been an amendment.

15         THE COURT:  But that would not have been filed

16  in this court.

17         MS. YU:  No.

18         MR. SULLIVAN:  Oh, no, for sure, I'm just

19  trying to suggest to plaintiff that that may be where

20  her confusion about where she filed an amended

21  complaint --

22         MS. YU:  No.  No, that's a different court, I

23  know.

24         MR. SULLIVAN:  Okay, (indiscernible) then.

25         THE COURT:  Okay, hold on one minute, bear

14

1

2  with me, ladies and gentleman, while I just take

3  another look at the docket.  What I'm looking at, Ms.

4  Yu, is your response to the plaintiff's motion to dismiss

5  your original case.  Sometimes this is where plaintiffs

6  attach their proposed amended complaint, but I don't see

7  any proposed amended complaint attached to your opposition

8  papers.

9          So I think what we should do here, ladies and

10 gentleman, is we should operate on two tracks.  Ms. Yu, I

11 am going to give you a date for filing an amended

12 complaint and I am going to give you a generous period of

13 time within which to do that.  And I am also going to

14 direct that during that same period of time the parties

15 are to set up by themselves, they don't need the Court for

16 this, a time and place to discuss settlement. So I am

17 going to ask the parties to both of those two things at

18 the same time. If the settlement discussions are

19 productive, that obviously will be hugely beneficial for

20 both parties and if you are able to reach agreement on the

21 terms of the settlement, the City will notify me by letter

22 and we will all know what to do at that point. But if you

23 are unable to reach agreement on a settlement, then I

24 think we are going to need the plaintiff to go ahead and

25 formally file and amended complaint and again, I will then

1

2 give the City and the other defendants an opportunity to

3 review it and determine whether they believe it should be

4 answered, in which case the next step would be discovery, or

5 whether it remains deficient in some ways or in all ways, in

6 which case we can expect another round of motion practice.

7        Let me remind you, Ms. Yu, I'm sure you have

8 carefully rad the Second Circuit's opinion, but in order to

9 make sure that we are all on the same page, as I understand

10 what is open to you at this time, what is available to you

11 at this time, what you are permitted to re-plead is as

12 follows. You are permitted to re-plead your state and city

13 claims of discrimination and related claims to the extent

14 that they are based on events since September 25, 2014, and

15 to the extent that they are based on an episode or episodes

16 other than those formally litigated before the State

17 Division of Human Rights. You are permitted to re-plead

18 your federal claims which I understand to be brought

19 principally under Title 7 and the ADEA, to the extent that

20 they are based on events after September 28, 2016. You are

21 not permitted to re-plead your civil rights claim under

22 Section 1981. And to the extent you do choose to re-plead

23 either your state claims, your city claims or your federal

24 claims within the applicable statute of limitation, it is

25 your responsibility, Ms. Yu, to plead, as we say in the

16

1
2  legal business, to plead facts rather than conclusions. That
3  is, to give you an example just to illustrate the point, it
4  is not sufficient to say that so and so acted
5  discriminatorily towards me, or that I was not hired or I
6  was not promoted, or I was disciplined because of some
7  protective characteristic such as race or age, you actually
8  have to state the facts which underlie that contention.  For
9  purposes of pleading, the Court will assume that the facts
10  that you state are true, the Court will temporarily make
11  that assumption during the pleadings stage of the case, and
12  the Court will ask itself, by the Court I mean either me or
13  the District Judge depending who gets the motion, the Court
14  will ask itself if these facts are true, fi the plaintiff
15  can prove that these specific events occurred, does it add
16  up to the legal claim which she is making.
17          So again, it's generally not sufficient to say,
18  for example, I was passed over because of my race, you have
19  to explain the facts that lead you to believe that. Perhaps
20  it was something that somebody said, perhaps it was because
21  you felt that you were better qualified than persons
22  of a different race, whatever the underlying facts are
23  that are the basis for your legal conclusion have to
24  actually be in your complaint as facts. Do you
25  understand what I have told you?

1

2          MS. YU:  Yes, I thought I had did that on the

3    first complaint though.

4          THE COURT:  Well, Judge Sweet felt that you

5    did not, and the Second Circuit did not disagree with

6    Judge Sweet, but it did rule that since you are a pro

7    se plaintiff, you get another chance. So that's what

8    we're doing now.  I should add, Ms. Yu, this is a good

9    time for me to tell you that we do have a legal

10   clinic, it's called the NYLAG clinic, NYLAG stands for

11   New York Legal Assistance Group, I don't know if

12   you're familiar with it.

13         MS. YU:  Yes, I am.

14         THE COURT:  You've worked with them?

15         MS. YU:  Yes.

16         THE COURT:  Okay.  So they remain available to

17   assist civil litigants during the national health

18   emergency.  However, like everybody else, they have

19   gone to a remote service model, so in order to get an

20   appointment with NYLAG, you have to call them, and I'm

21   going to assume you already have that telephone

22   number, if not it's available on the Court's website.

23         MS. YU:  Yes.

24         THE COURT:  Leave a message and they will

25   return your call and make a telephone appointment with

18

1

2  you.  They certainly understand the legal principles

3  that I have just outlined to you and they may be very

4  helpful to you during this process.  So Ms. Yu,

5  actually before I ask Ms. Yu how much time she needs,

6  let me ask the defendants if they believe I have

7  misstated in any way the claims which are still open

8  to the plaintiff?

9          MR. SULLIVAN:  Your Honor, this is Mr.

10 Sullivan, one other point that we wanted to make, and

11 Ms. Wilkens may also remember some additional points,

12 but one of the points we had --

13         THE COURT:  You're mumbling a little bit, Mr.

14 Sullivan.

15         MR. SULLIVAN:  My apologies, Your Honor.

16         THE COURT:  That's better.

17         MR. SULLIVAN:  Thank you.  One of the concerns

18 we had, and Ms. Wilkens may remember some additional

19 concerns, but one we had was Ms. Yu had identified a

20 number of bases of alleged discrimination but had

21 failed to identify what they were. For example, she

22 was suing under religion but didn't identify her

23 religion.

24         THE COURT:  Yes, that's a good point, I

25 actually notice that myself when I reviewed the

19

1

2  complaint. So this is a good example, Ms. Yu, of the

3  principle we were discussing a moment ago where it's

4  important to plead, that is to state in your

5  complaint, actual facts rather than conclusions.

6  You've stated in your original complaint that you felt

7  you were discriminated against in part on the basis of

8  race and there are some supporting facts, some, not a

9  lot, but some supporting facts in your original

10 complaint that relate to that conclusion.  You also

11 stated, however, that you were discriminated against

12 on the basis of religion, but as best I can tell there

13 are zero supporting facts related to that allegation.

14 You do not state, for example, what your religion is

15 or what your perceived religion is, or what kind of

16 conduct, comments or otherwise underlie your belief

17 if, indeed, you have the belief that you were

18 discriminated against on a religious basis.

19          Now sometimes, to be candid, sometimes EEOC

20 plaintiffs check all the boxes just to make sure

21 they're not missing anything, that's kind of a natural

22 human instinct. But when you sit down to create your

23 amended complaint, Ms. Yu, that's not a good instinct,

24 you should only plead claims that you actually think

25 you have facts to support.  Do you understand what I

1

2 am telling you?

3        MS. YU:  I understand.

4        THE COURT:  All right.  So Ms. Yu, how much

5 time would you like to file your amended complaint?

6        MS. YU:  May I ask a question?

7        THE COURT:  Sure.

8        MS. YU:  Regarding discussions of settlement,

9 would this discussion be prior to agreeing to the

10 settlement or after doing a complaint?  So in other

11 words, we can't --

12        THE COURT:  I want you to do both at the same

13 time. That is if you are able to reach agreement on a

14 settlement then we never need to have an amended

15 complaint, we never need to have an answer to the

16 amended complaint, we never need to have motion

17 practice relating to the amended complaint. I want the

18 two sides to have, again, I would say early settlement

19 discussions, even though the case is a 2017 case it's

20 early in the present phase of the case.  I think I

21 understand what you're getting at Ms. Yu, certainly

22 after the defendants' lawyers see your amended complaint

23 they'll have a better idea of whether they're planning to

24 dismiss again. But I also think that given the many

25 administrative complaints and the fairly significant record

we have as to what actually happened over the course of your

career with ACS, I think both sides know enough about the

case to rationally be able to determine whether settlement

is a possibility. Look, if you come in hot and heavy, as

they say, and say I want, you know, a million dollars and

Mayor de Blasio to apologize to me personally, believe it or

not I've had people say that to me, then settlement isn't

going to go anywhere. That's just, you know, everyone would

just be wasting their time.  But if there is a reasonable

settlement to be had, I think we'll know that fairly

quickly.

           MR. SULLIVAN:  Your Honor, this is Mr.

Sullivan, I apologize if I'm interrupting, I just

wanted to let Ms. Yu know, with all due respect, the

City asked for a demand from the plaintiff and I think

Your Honor's comments were fair, I don't want to put

anyone in a bad spot, but we would ask for a realistic

demand for Ms. Yu and then we'll be able to assess

whether a settlement is a possibility.

           THE COURT:  Well, look, somebody has to go

first.

           MR. SULLIVAN:  Yes.

           THE COURT:  You know, I don't want the two

sides saying, no, you go first, no, you go first, no,

1

2    you go first. I generally don't care which side goes

3    first, but I will tell you this, the City attorneys

4    have done more of this than Ms. Yu has. The City

5    attorneys settle cases like this all the time and Ms.

6    Yu, I'm guessing, you have somewhat less experience in

7    negotiating a settlement, correct?

8           MS. YU:  Correct.

9           THE COURT:  So it might not be such a terrible

10   idea in this case for the City to go first, Mr.

11   Sullivan, what do you think?

12          MR. SULLIVAN:  Again, Your Honor, I

13   (indiscernible) take your comments and I certainly

14   appreciate where they're coming from, I just know as a

15   practical matter when I try to get money from the

16   Comptroller, I'm typically asked what is plaintiff

17   looking for. So that's why we usually ask plaintiff to

18   --

19          THE COURT:  All right, here's what I'm going

20   to do, I am going to ask the plaintiff to go first but

21   I'm not going to get you off the hook, Mr. Sullivan, I

22   don't want to hear a month from now or six weeks from

23   now that plaintiff made a demand and the City declined

24   to make an offer because they felt that the

25   plaintiff's initial demand was unrealistic. That gets

you off the hook way too easy.  I see this a lot when

I conduct judicially supervised settlement

conferences, it drives me nuts even in the best of

times, and I don't want that to be where we're going

here. So I'm happy to direct the plaintiff to go

first, but I am not going to let the City decline to

bid because the City feels that the plaintiff's offer

is too high.  The City always feels that the

plaintiff's initial offer is too high. But if we're

going to have a negotiation, both sides have to be

willing to put something on the table, do you

understand me, Mr. Sullivan?

          MR. SULLIVAN:  I certainly do, Your Honor,

thank you.

          THE COURT:  All right.  So again, Ms. Yu,

you're going to be working on two tracks at once,

you're going to be preparing an amended complaint, but

you also have to be prepared to tell the City in as

realistic terms as possible what it is you want. And

this is something you can also consult with NYLAG

about. The attorneys there have done this before and

they probably have a pretty good idea of what the

settlement value of various kinds of cases typically

is, which is to say what you could expect the City to

24

1  be willing to consider as a reasonable settlement.

3          So how much time would you like, I'm thinking

4  60 days for both tracks. That is to initiate the

5  settlement conversation, and if you can't settle the

6  case, to file your amended complaint within 60 days

7  from today, how does that sound?

8          MS. YU:  That sounds good. I'm also thinking

9  that the longer this is lasting the more the dollars

10  are worth, so --

11          THE COURT:  Now why do you say that, Ms. Yu?

12          MS. YU:  Because the longer I'm out of work,

13  the longer my value is depleting in the general

14  market, but also in --

15          THE COURT:  Well, so let's get a little bit of

16  background here.  You were terminated formally from

17  ACS in 2016, did I get that right?

18          MS. YU:  Correct, the end of the year, yes.

19          THE COURT:  At the end of 2016.

20          MS. YU:  Yes.

21          THE COURT:  And have you worked since then?

22          MS. YU:  Dabbled in jobs.

23          THE COURT:  You've dabbled in jobs.

24          MS. YU:  Yes.

25          THE COURT:  All right. I should advise you now

that that information, if the case goes forward, is

going to become relevant, you're going to be required

to divulge that information, who you worked for and

how much you got paid because that's going to be

relevant to any potential damages claim. Ordinarily, I

understand what you're saying, ordinarily, if someone

has a discrimination claim and part of the claim is

that they were unlawfully terminated, they can argue

and they often do argue that the longer they're out of

work, the higher their settlement or damages award

should be.  However, it's not that simple, even if you

were to establish that you were unlawfully terminated,

you would still have the burden of proof of

establishing that that's the reason you were unable to

be reemployed, which is a separate question and

doesn't always follow the one from the other.

In addition, if your continuing unemployment

was due to intervening events, let's say, for example,

a virus pandemic had required the economy of the United

States to shut down in a way that throws a lot of people

out of work, even if they don't have a claim of

discrimination, that might well be precisely the fruit of

a situation that would cut off a civil rights plaintiff

damages claim on the theory that that is an independent

1

2  cause and cannot be attributed to the allegedly unlawful

3  conduct. So under present circumstances, just trying to

4  think it through with you, under present circumstances,

5  I'm not sure that the situation we are in now is

6  particularly relevant to your damages claim one way or the

7  other.

8        MS. YU:  That's true, but I would still be

9  working as, because the city workers are still working I

10 believe, I mean the counsel is still working and they're

11 employed, so I would be working along with them, so --

12       THE COURT:  If something else had happened since

13 2016, which has a speculative element to it.

14       MS. YU:  Yes.

15       THE COURT:  All right, so I think you understand

16 what the issues are.  Let me take a look at my calendar

17 here, give me one moment, today is April 1st, sixty days

18 from today is I believe May 30th, which is a Saturday. So

19 Monday, June the 1st, Monday, June the 1st will be the

20 plaintiff's deadline to file an amended complaint in

21 conformity with the mandate of the Second Circuit Court of

22 Appeals.  That is you're confined to the claims that the

23 Second Circuit remanded and gave you an opportunity to re-

24 plead.

25       Now before that happens, how much time do you

27

1
2 need, Ms. Yu, to decide what your demand is going to be to
3 the City?

4          MS. YU:  Oh, I mean I can do it tomorrow.

5          THE COURT:  Well I'm going to give you a little
6 longer than that.

7          MS. YU:  You mean the formal documents?

8          THE COURT:  Yes and no.  So today is April 1st,
9 I'm going to give you until April 15th, two weeks to make
10 a settlement demand on the City. I do think you should put
11 it in writing, but please don't put it on the docket, this
12 is not going to be a public court document.  Generally
13 speaking, settlement negotiations are confidential from
14 the public, that is helpful to the process.  So it
15 should be a letter that you can email, if you have
16 their email address, directly to the City's attorneys.
17 And I will give the City two weeks after that to
18 respond again in writing, so that would be April the
19 29th.  So April 15th for the plaintiff's demand, April
20 29th for the defendant response, and remember, Mr.
21 Sullivan, this is not a letter saying we decline to
22 respond because your offer was so ridiculous, even if
23 you feel that way, this is a letter saying this is our
24 offer, got it?

25          MR. SULLIVAN:  I understand that, Your Honor,

1                                                                    28

2   the only thing I would request is, again, just

3   (indiscernible) --

4           THE COURT:  Get a little closer to the phone,

5   Mr. Sullivan, get a little closer to the phone.

6           MR. SULLIVAN:  My apologies, there must be

7   something wrong with my phone, my apologies, I'll try

8   again.  I understand what you said, Your Honor, and

9   we'll certainly follow those instructions. My only

10  request is that we be given a little more time only

11  because of the emergency tying up a lot of City

12  resources at the moment, and I know of people that

13  I'll need to review whatever settlement memo I can

14  prepare, so if I could have an additional week or ten

15  days, that would be --

16          THE COURT:  All right, I'll give you May the

17  6th, that's three weeks for your response.

18          MR. SULLIVAN:  Thank you, Your Honor.

19          THE COURT:  It shouldn't take the City, even

20  in difficult times, more than three weeks to respond

21  to an employment discrimination demand, you've done

22  this before.

23          MR. SULLIVAN:  I appreciate that, Your Honor,

24  thank you.

25          THE COURT:  All right, after we have the

29

plaintiff's written demand and the City's written

offer, I am going to require, not suggest but require

that within the two weeks after that, that is between

May the 6th and May the 20th, the pro se plaintiff and

at least one of the attorneys for the defendant get on

a live telephone call and have a good faith settlement

discussion.  I find that a face to face conversation,

even if the two sides are very, very far apart, would

be extremely helpful and certainly more helpful than

written demands and counteroffers in making each side

understand where the other side is coming from and

whether there truly is flexibility or not. So I am

going to mandate that that real time conversation

happen, it can happen on the phone line, it can happen

over Zoom, or Skype or whatever you prefer to use.

Obviously, it should not happen in person under

present circumstances. And then once that conversation

has occurred, I would like a letter from the

defendants after consultation with the plaintiff, I

want the content of the letter to be joint, even

though only one side is going to file is, just telling

me we did what you said, the plaintiffs gave us their

demand, we gave the plaintiff our counteroffer, we had

a real time conversation on such and such a day, and

30

then you will either tell me we settled the case, we

can't settle the case, we're still working on settling

the case, whatever the status of settlement is at that

point. And I want that letter on or before June 1st,

which is the plaintiff's deadline for filing her

amended complaint.  Okay?

        MR. SULLIVAN:  Yes, Your Honor, thank you.

        MS. WILKENS:  Yes.

        MS. YU:  Yes, Your Honor.

        THE COURT:  I don't think, given that we are

still getting the pleadings finalized, I don't think

there is anything further for me to schedule at this

time.  If the plaintiff files a complaint, I will

leave it to the defendants either to answer or move

within the time set by the Federal Rules of Civil

Procedure, or to request an extension for one of those

two purposes if that is what defendants determine that

they need.

        MS. YU:  May I add something?

        THE COURT:  Sure.

        MS. YU:  The City has asked for multiple

extensions of time to (indiscernible) my complaints,

so maybe it's premature to ask that just if they just

answer accordingly, I believe it's thirty days, but

31

they've been getting multiple times of extension and extension of documents, it's just they've always gotten what they wanted and I'm just a pro se, you know, plaintiff. So if they can just stick to the schedule and not keep asking for multiple dates of extension, that will be appreciated.

THE COURT:  I understand your concern, Ms. Yu, and it can be frustrating if you feel that the other side is taking more time than you are. On the other hand, the City Law Office I know is terribly overburdened, as all law offices are by trying to operate under the extreme conditions that are currently in force, so, you know, I am not going to promise you that I'm going to be a strict taskmaster here. Under present circumstances we all need to be somewhat courteous and somewhat generous with one another in terms of time.

MS. YU:  I have just filed this like multiple, to me I have been through all the stages and for them to have multiple lawyers, like every time there's a different lawyer, and I believe they've gotten multiple chances to answer all the questions. So I've been answering it since 2016 or actually even before that since New York State, it's just they've gotten

1                                                              32

2  multiple opportunities because that's City Hall,

3  right, they have like a hundred lawyers to answer, so.

4          THE COURT:  They have a hundred lawyers and

5  they have thousands and thousands of cases, you're not

6  the only one, Ms. Yu, we're all doing the best we can.

7  All right, anything further today, Ms. Yu?

8          MS. YU:  Yes, this letter of, that you've

9  asked for me to type up for the demand, is that

10 emailed directly to the lawyers, are you cc'd on it as

11 well or just --

12         THE COURT:  No, I don't want to see it, I

13 don't need to see it.  Settlement negotiations happen

14 directly between the plaintiff and the defendants, the

15 Court does not need to be involved other than you

16 telling me later how it came out, okay?

17         MS. YU:  Got you, thank you.

18         THE COURT:  Anything else from defendants?

19         MR. SULLIVAN:  Your Honor, this is Mr.

20 Sullivan, probably in excess of caution, just to make

21 it clear to Ms. Yu, my understanding of your

22 instructions is when we send the letter to the Court

23 June 1st, again, same thing, we can mention that we've

24 had some discussions but we should not mention the

25 amounts that were exchanged, am I correct?

33

1

2          THE COURT:  That's correct. So by way of

3   example only, the City might file a letter a couple of

4   days before June 1st and it might say: "Dear Judge

5   Moses, we are writing to provide a status update

6   regarding settlement, on thus and such a day the

7   plaintiff emailed a written settlement demand to

8   defendants' counsel. On thus and such a day the

9   defendants emailed, rejected the demand but emailed an

10  offer in a different amount to the plaintiff.  On thus

11  and such a day plaintiff Yu and attorney Sullivan

12  conducted a Skype conversation regarding settlement

13  for 20 minutes and were able to narrow the gap but

14  have not yet resolved the case, we are continuing to

15  discuss."  That might be, for example, a status

16  letter.

17          If the parties really do make progress in

18  discussing settlement, even if the progress is modest

19  I will leave you with this thought, in addition to

20  offering a mediation service through our court annexed

21  mediators, I, as your assigned Magistrate Judge, will

22  be willing to conduct a settlement conference myself

23  where I get personally involved in the settlement

24  negotiation including, at that point, of course,

25  knowing exactly what figures are being discussed and

34

1
2   so forth.  And, of course, under present circumstances
3   I would also conduct that on a telephone conference
4   call.  But I'm not going to do that at the beginning,
5   I'm not going to do that until and unless I believe
6   that the parties are close enough so that there is a
7   possible settlement to be had, that a Magistrate Judge
8   can perhaps twist a few arms and make it happen.
9   Until and unless you get to that point, it's not a
10  good use of the Court's time, go it?
11          MS. YU:  Understood.
12          THE COURT:  All right, so to review the dates
13  again, plaintiff will make her written demand by April
14  15th, defendants will respond in writing by May the
15  6th, the parties will have a direct discussion about
16  it, not in writing but on the phone or on some kind of
17  video conference on or before May 20th, the City will
18  provide me a settlement status update on or before
19  June the 1st, and if the parties have not succeeded in
20  settling the case, the plaintiff's amended complaint
21  will be due on June the 1st.  And Ms. Yu, you have ECF
22  filing privileges correct, so you don't have to worry
23  about how you're going to get that thing on the
24  docket.
25          MS. YU:  Yes.  Yes, I do.

1                                                              35

2          THE COURT:  Good, very happy to hear it.  All

3   right, anything else, ladies and gentleman?

4          MS. YU:  No, Your Honor.

5          THE COURT:  Thank you very much for your time,

6   we will be adjourned, a very brief scheduling order

7   containing the same dates I just outlined will be

8   posted on the docket hopefully later today.  Ardis,

9   you may take us off record and we will now be

10  adjourned.

11         MS. YU:  Thank you.

12         (Whereupon the matter is adjourned.)

13

14

15

16

17

18

19

20

21

22

23

24

25

36

<u>C E R T I F I C A T E</u>

    I, Carole Ludwig, certify that the foregoing
transcript of proceedings in the United States District
Court, Southern District of New York, Yu versus The City of
New York, et al., Docket #17cv7327, was prepared using PC-
based transcription software and is a true and accurate
record of the proceedings.


Signature_____
                    Carole Ludwig
Date:  April 22, 2020