USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 3/19/21

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

Yu,

           Plaintiff,

    –v–

City of New York, *et al*.,

           Defendants.

17-cv-7327 (AJN)

MEMORANDUM
OPINION & ORDER

---

ALISON J. NATHAN, District Judge:

    Plaintiff brings claims under federal and state law for employment discrimination, retaliation, and hostile work environment against Defendants City of New York and the Administration of Children's Services. Defendants filed a motion to dismiss the complaint on the grounds that Plaintiff has failed to state a claim and that many of those claims are also untimely or otherwise barred. For the reasons that follow, Defendants' motion is GRANTED.

### I.    BACKGROUND

#### A.  Factual background

    The following facts are drawn from Plaintiff's Second Amended Complaint. Dkt. No. 65. Plaintiff is a non-white, Asian female of Chinese descent. *Id.* at ¶ 9. She was hired in May 2008 by the City of New York to work as a graphic artist for the Administration of Children's Services (ACS). *Id.* at ¶ 10. Plaintiff was the only Chinese-American employee in her unit. *Id.* at ¶ 12.

    Despite satisfactory work performance, Plaintiff claims Defendants discriminated against her on the basis of her race and national origin and retaliated against her on various occasions

1

between 2010 and 2016. *Id.* at ¶¶ 12-13. Plaintiff generally alleges that during this period, Defendants took the following actions: (1) denied Plaintiff salary adjustment and/or promotion despite excellent work performance, even after winning labor arbitrations, *Id.* at ¶ 16, (2) denied Plaintiffs' request for computer training and other professional development trainings, *Id.* at ¶ 17, (3) hired supervisors and workers of lesser qualifications and expertise than her and provided them with professional training and development, opportunities for promotion or advancement and salary increases, *Id.* at ¶¶ 18-19. Moreover, Plaintiff maintains that at all times, Defendants "kept [her] under a hostile work environment," and "shuffle[ed] [her] from supervisor to supervisor," all of whom were informed of her disciplinary history and used it against her. *Id.* at ¶ 20.

After six years of working at ACS and experiencing various alleged discriminatory incidents,[1] Plaintiff eventually was terminated from her position. In early 2016, Plaintiff was accused of engaging in threatening behavior by a supervisor, Kaitlyn Simmons, and was disciplined for thirty days without pay. *Id.* at ¶ 43. Plaintiff alleges that Defendants refused to investigate Plaintiff's side of the story and that she filed a workplace violence report because of Simmons behavior during the incident. *Id.* at ¶¶ 43-44. When Plaintiff returned from her suspension on April 13, 2016, Defendants relocated her to Carnasie Brooklyn warehouse. *Id.* at ¶ 46. The next day, Plaintiff attempted to attend a class at a city-wide training center, which she had been previously approved to attend by her supervisors at ACS, but was told at the class that she was not allowed to attend. *Id.* at ¶ 46.

Following the transfer to the warehouse and the training class incident, Plaintiff took a number of steps regarding Defendants' alleged mistreatment. On April 20, 2016, Plaintiff

---

[1] As discussed below, these incidents are outside the statute of limitations for Plaintiff's federal claims and therefore are not discussed here.

2

inquired about Workers Compensation after "being hurt on the job during [the] rushed packing to be removed offsite," and was told by an unnamed employee that "ACS w[ill] fight you tooth and nail," so she walked away. *Id.* at ¶ 48. In July 2016, she filed an internal agency EEO complaint of retaliation for being moved to the Brooklyn warehouse, but the complaint "was again dismissed." *Id.* at ¶ 49. She reported abuses to the "Department of Investigation (DOI) on September 11, 2016," and "saw an ACS director at the location." *Id.* at ¶ 51.

Plaintiff was then terminated from ACS on September 15, 2016. That day, Plaintiff was called to come to the main ACS warehouse to retrieve a termination letter. *Id.* at ¶ 52. After receiving the letter, Plaintiff was escorted out of the building by security, and the security guard allegedly "laughed and shook his head in disbelief." *Id.* When escorted by the security desk, she saw that her picture "was already printed and posted," to "deliberately shame and embarrass[]" her. *Id.* at ¶ 53.

After a review by the Civil Service Commission, Plaintiff's suspension and termination from ACS was upheld in 2017 on the grounds of "incompetence, insubordination, and misconduct" and she was denied requests for reinstatement and to be transferred to another city agency. *Id.* at ¶ 54. Following her termination, Plaintiff applied for other employment throughout the city of New York and twice had appointments for interviews that were subsequently cancelled. *Id.* at ¶ 58. When asked for a reason for the cancellation, Plaintiff was told nothing by the scheduler other than "the fact that [her] records are public." *Id.* at ¶ 58. Plaintiff also says that her email has been blocked throughout the City of New York and she has been "further denied work opportunities." *Id.* at ¶ 63.

In July 2017, Plaintiff filed a complaint with the EEOC for discrimination and retaliation. *Id.* at ¶ 59. On August 10, 2017, the EEOC informed Plaintiff that it was "unable to conclude

that the information obtained" in Plaintiff's complaint "establishes violations of the statutes" listed therein and that Plaintiff had 90 days to file a lawsuit under federal law. Dkt. No 2 at 7.

### B. Procedural Background

On September 25, 2017, Plaintiff filed a complaint in this Court alleging claims against Defendants City of New York and ACS under Title VII of the Civil Rights Act of 1964 ("Title VII"), the Age Discrimination Act of 1967 ("ADEA"), the Equal Protection Clause of the Fourteenth Amendment, 42 U.S.C. §§ 1981, 42 U.S.C. §§ 1983, New York State Human Rights Law ("NYSHRL"), and New York City Human Rights Law ("NYCHRL"). Dkt. No. 2. The case was originally assigned to Judge Sweet, who issued an Opinion on November 29, 2018 granting Defendants' motion to dismiss the complaint in its entirety. Dkt. No. 36. After determining that Plaintiffs' claims were either barred by the statute of limitations or the election of remedies doctrine, or that Plaintiff had otherwise failed to state a claim, Judge Sweet dismissed Plaintiff's federal claims with prejudice and declined supplemental jurisdiction over Plaintiff's state law claims. *Id.*

The Second Circuit affirmed in part and vacated and remanded in part in an Opinion dated February 24, 2020. Dkt. No. 43. After agreeing that some of Plaintiff's claims were untimely and that Plaintiff's allegations were conclusory, the Second Circuit held it was an error for the Court not to give the *pro se* Plaintiff leave to amend her complaint so that she may attempt to plausibly allege facts sufficient to state a claim. *Id*. The Court thus affirmed the dismissal as to Plaintiff's Section 1981 claim and all untimely NYSHRL, NYCHRL, Section 1983, Title VII, and ADEA claims, and remanded to give the Plaintiff an opportunity to amend. *Id.*

After the Second Circuit decision, the case was reassigned to the Undersigned and the Court referred the case to Magistrate Judge Barbara C. Moses for general pretrial management. Dkt. No. 44. Judge Moses instructed Plaintiff that based on the Second Circuit's opinion she could re-plead her state and city claims of discrimination to the extent they are based on events after September 25, 2014, and to the extent they are based on events other than those formally litigated before the State Division of Human Rights. Judge Moses also informed Plaintiff that she could re-plead her federal claims to the extent they are based on events after September 28, 2016. Dkt. No. 54 at 15. Plaintiff was also instructed that she needed to "plead facts rather than conclusions." *Id.*

Plaintiff filed an amended complaint on June 1, 2020, and Defendants moved to dismiss shortly thereafter. Dkt. Nos. 57, 60. The Court granted Plaintiff leave to amend a second time, Dkt. No. 64, and she filed the Second Amended Complaint on July 31, 2020, Dkt. No. 65. In her Second Amended Complaint, Plaintiff abandoned her ADEA claims, § 1983 claims, and equal protection claims. *Compare* Dkt. No. 2 at 1, *and* Dkt. No. 65 at 1. As the Second Circuit affirmed the district court's dismissal of her 1981 claims, Plaintiff's only remaining federal claims are for discrimination, retaliation, and hostile work environment under Title VII. Plaintiff renews her claims under the NYSHRL and NYCHRL. Dkt. No. 65.

## II.   DISCUSSION

Defendants move to dismiss Plaintiff's Second Amended Complaint on the grounds that many of Plaintiffs' claims are still untimely or barred by collateral estoppel, and that Plaintiff has otherwise failed to state a claim for all of her claims. Dkt. No. 67.

On a motion to dismiss under Fed. R. Civ. P. 12(b)(6), "dismissal is proper unless the complaint contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is

5

plausible on its face.'" *Schik v. Miramed Revenue Grp., LLC*, No. 18-CV-7897 (NSR), 2020 WL 5659553, at *2 (S.D.N.Y. Sept. 23, 2020) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The complaint must provide "more than labels and conclusions" to survive the motion. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Moreover, "*pro se* complaints are held to less stringent standards than formal pleadings drafted by lawyers[] and are to be construed liberally on a motion to dismiss." *Fermin-Rodriguez v. Westchester Cty. Jail Med. Pers.*, 191 F. Supp. 2d 358, 361 (S.D.N.Y. 2002) (quotations omitted).

### A. Federal Claims

For the reasons that follow, even construing Plaintiff's amended complaint liberally, the Court determines that Plaintiff has failed to state a claim for relief under Title VII for her claims for discrimination, retaliation, and hostile work environment, to the extent those claims are not already time-barred.[2]

#### 1. Discrimination

Title VII of the Civil Rights Act of 1964 prohibits an employer from discriminating against an individual "with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). In order to defeat a motion to dismiss or a motion for judgment on the pleadings in a Title VII discrimination case, "a plaintiff must plausibly allege that (1) the

---

[2] Additionally, though courts will sometimes consider a plaintiff's Title VII and NYSHRL claims together because they are analyzed under the same legal standard, *see McGill v. Univ. of Rochester*, 600 F. App'x 789, 790 (2d Cir. 2015), the Court will not do so here. In this case, Plaintiff's NYSHRL claims are subject to a different limitations period (September 25, 2014) than Plaintiff's Title VII claims (September 28, 2016), and thus may properly be based on additional allegations in Plaintiff's Second Amended Complaint. *See* Dkt. No. 43. However, because the Court dismisses all of Plaintiff's Title VII claims, the Court declines to exercise jurisdiction over Plaintiff's state and city claims, including her NYSHRL claims, as discussed *infra* II.B.

employer took adverse action against him, and (2) his race, color, religion, sex, or national origin was a motivating factor in the employment decision." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 87 (2d Cir. 2015). "[A]t the initial stage of the litigation—prior to the employer's coming forward with the claimed reason for its action—the plaintiff does not need substantial evidence of discriminatory intent," instead "[i]f she makes a showing (1) that she is a member of a protected class, (2) that she was qualified for the position she sought, (3) that she suffered an adverse employment action, and (4) can sustain a minimal burden of showing facts suggesting an inference of discriminatory motivation," then she will survive the motion to dismiss. *Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d Cir. 2015).

As the Second Circuit held in its Summary Order in this case, Plaintiff's Title VII claims are limited to those events that occurred after September 28, 2016, the date 300 days before Plaintiff filed her EEOC complaint. Dkt. No. 43 (citing 42 U.S.C. § 2000e-5(e), (f); 29 U.S.C. § 626(d)). In her Second Amended Complaint, Plaintiff states that she was terminated two weeks before this date on September 15, 2016. Dkt. No. 65 at ¶ 52. Thus, the only discrete acts that could potentially serve as the basis of a discrimination claim[3] are as follows: (1) the Civil Service Commission's review and affirmation of Plaintiff's termination in 2017, (2) the City's decision not to hire Plaintiff for other employment, (3) the City of New York allegedly blocking Plaintiff's email, and (4) Plaintiff being "further denied work opportunities." Dkt. No. 65 ¶¶ 54-63.

Although Plaintiff sufficiently alleges that she is a member of a protected class, the amended complaint fails to plausibly allege the remaining elements of a Title VII claim based on these incidents. First, as to the other employment positions and work opportunities, Plaintiff has

---

[3] The Second Circuit held that the Court may properly consider acts that occurred prior to September 28, 2016 for Plaintiff's hostile work environment claim, Dkt. No. 43, which are discussed *infra* II.A.3.

failed to identify what those positions or opportunities were that she allegedly applied for and was denied, and thus has not plausibly alleged that she was "qualified for the position she sought." *Littlejohn*, 795 F.3d at 311.

Moreover, to the extent any of these incidents constitute adverse employment actions, Plaintiff has failed to meet the minimal burden of showing an inference of discriminatory motivation. "An inference of discrimination can be proven through a variety of methods, including 'the employer's criticism of the plaintiff's performance in ethnically degrading terms; or its invidious comments about others in the employee's protected group; or the more favorable treatment of employees not in the protected group; or the sequence of events leading to the plaintiff's discharge.'" *Espinoza v. New York City Dep't of Transportation*, 304 F. Supp. 3d 374, 389 (S.D.N.Y. 2018) (quoting *Littlejohn*, 795 F.3d at 312). Plaintiff has failed to provide any factual allegations of this nature that would support an inference that any of the acts taken by the City after September 28, 2016 were motivated even in part by Plaintiff's race, national origin, or color. Because "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to defeat a motion to dismiss," *Achtman v. Kirby, McInerney & Squire, LLP*, 464 F.3d 328, 337 (2d Cir. 2006) (cleaned up), Plaintiff has failed to plead that she was discriminated against under Title VII and those claims are dismissed.

### 2. Retaliation

Title VII also prohibits an employer from discriminating against an employee because they "opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e–3(a). In order to survive a motion to dismiss on a Title VII retaliation claim, "the plaintiff must plausibly allege

8

that: (1) defendants discriminated—or took an adverse employment action—against him, (2) because he has opposed any unlawful employment practice." *Vega*, 801 F.3d at 90. Though "opposition to a Title VII violation need not rise to the level of a formal complaint in order to receive statutory protection," a plaintiff must show that she engaged in "protected activity" under the statute, which includes "activities such as making complaints to management, writing critical letters to customers, protesting against discrimination by industry or by society in general, and expressing support of co-workers who have filed formal charges." *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 566 (2d Cir. 2000) (quotations omitted).

Plaintiff has failed to state a claim for retaliation under Title VII. Her claims are limited to those based on events that occurred after September 28, 2016, and Plaintiff has not provided any factual allegations that she engaged in any conduct constituting "protected activity" under the statute after that date other than filing an EEOC complaint. However, Plaintiff does not allege that any adverse employment action was taken after that time.

### 3. Hostile Work Environment

In order to establish a hostile work environment claim under Title VII, a plaintiff must show "[1] that the [discriminatory conduct] was sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment, and [2] that a specific basis exists for imputing the objectionable conduct to the employer." *Alfano v. Costello*, 294 F.3d 365, 373 (2d Cir. 2002) (internal quotations omitted). Because "[e]veryone can be characterized by sex, race, ethnicity, or (real or perceived) disability; and many bosses are harsh, unjust, and rude," it is "therefore important in hostile work environment cases to exclude from consideration personnel decisions that lack a linkage or correlation to the claimed ground of discrimination." *Id.* at 377.

Determining "whether an environment is 'hostile' or 'abusive' can be determined only by looking at all the circumstances," including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 23 (1993). The workplace must be so "severely permeated with discriminatory intimidation, ridicule, and insult that the terms and conditions of her employment were thereby altered." *Id.* The incidents of discriminatory intimidation "must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive." *Perry v. Ethan Allen, Inc.*, 115 F.3d 143, 149 (2d Cir. 1997). As such, "[i]solated acts, unless very serious, do not meet the threshold of severity or pervasiveness." *Alfano*, 294 F.3d at 374.

The Second Circuit vacated and remanded for the Court to reconsider the timeliness of this claim. Unlike Title VII discrimination and retaliation claims, for "a hostile work environment claim, the statute of limitations requires that only one [discriminatory] act demonstrating the challenged work environment occur within 300 days of filing," and "once that is shown, a court and jury may consider 'the entire time period of the hostile environment' in determining liability." *Petrosino v. Bell Atl.*, 385 F.3d 210, 220 (2d Cir. 2004) (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 117 (2002)). Thus, Plaintiff must plausibly allege at least one event after September 28, 2016 that constituted a discriminatory incident.

As discussed above, however, Plaintiff's complaint does not provide any factual allegations after September 28, 2016 of discriminatory incidents nor any incidents after that date that would demonstrate a hostile work environment. Therefore, Plaintiff has not alleged a discriminatory act within the relevant statute of limitations period and her Title VII claim for hostile work environment is time-barred. Indeed, the Second Circuit has previously held that

10

where "the only allegedly discriminatory act of which [a plaintiff] complained that occurred within the 300–day period was the termination of [their] employment," and the plaintiff "proffered no evidence to show that the termination, even if discriminatory, was in furtherance of the alleged practice of racial harassment," then the court shall dismiss the plaintiff's "Title VII claims of hostile work environment as untimely." *Patterson v. Cty. of Oneida, N.Y.*, 375 F.3d 206, 220 (2d Cir. 2004).

* * *

Plaintiff has therefore failed to state a claim under Title VII for discrimination, retaliation, or hostile work environment, and those claims are dismissed with prejudice.  Though Plaintiff is proceeding *pro se* and courts will ordinarily grant leave to amend at least once, *see Branum v. Clark*, 927 F.2d 698, 705 (2d Cir.1991), Plaintiff has already been granted two such opportunities, and the Court determines any further amendment would be futile.

### B.  State Law Claims

Because the Court dismisses all of Plaintiff's federal law claims, the Court declines to exercise jurisdiction over Plaintiff's NYSHRL and NYCHRL claims.  "[C]ourts regularly decline jurisdiction over NYSHRL and NYCHRL claims once the federal employment claims have been dismissed." *Harris v. NYU Langone Med. Ctr.*, No. 12 CIV. 0454 RA, 2014 WL 941821, at *2 (S.D.N.Y. Mar. 11, 2014), *aff'd*, 615 F. App'x 49 (2d Cir. 2015).  *See also Espinoza*, 304 F. Supp. 3d at 391 (collecting cases).  Those claims are therefore dismissed without prejudice to re-filing in state court.

### III.   CONCLUSION

11

For the reasons stated above, Defendants' motion to dismiss is GRANTED. Plaintiff's Title VII claims are dismissed with prejudice and Plaintiff's NYSHRL and NYCHRL claims are dismissed without prejudice to re-filing in state court. This resolves Dkt. No. 66.

The Court finds pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith. *See Coppedge v. United States*, 369 U.S. 438, 445 (1962). The Clerk of Court is respectfully requested to mail a copy of this Order to the Plaintiff, note that mailing on the public docket, issue judgment and close the case.

SO ORDERED.

Dated: March 19, 2021
      New York, New York

_____
ALISON J. NATHAN
United States District Judge